Mrs. Pinkie STINSON, Mrs. Ethel M. Matthews and Mrs. Gussie C. McMullen

v.

Robert FINCH, Secretary, United States Department of Health, Education and Welfare

and

William Burson, Director, Georgia Department of Family and Children Services.

Civ. A. No. 13370.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 3, 1970.

Frederic S. Le Clercq, Emory Community Legal Services Center, Atlanta, Ga., for plaintiff.

Arthur K. Bolton, Atty. Gen., Harold N. Hill, Jr., Robert J. Castellani, John W. Hinchey, and Alex Crumbley, Asst. Attys. Gen., Atlanta, Ga., John W. Stokes, U. S. Atty., Robert L. Smith, Asst. U. S. Atty., for defendant.

Before MORGAN, Circuit Judge, and HOOPER and EDENFIELD, District Judges.

EDENFIELD, District Judge:

Plaintiffs in this civil rights suit are public assistance recipients who challenge (1) the adequacy of the standards of need used by the Georgia Department

of Family and Children Services in administering its public assistance program for Aid to Families with Dependent Children, and (2) the constitutionality of § 1007 of the Social Security Amendments of 1969. Jurisdiction is alleged under 28 U.S.C. §§ 1343(3), 1346 (a) (2), 2281, 2282, and 2284, for claims allegedly arising under 42 U.S.C. § 1983. In addition to declaratory relief, plaintiffs seek to enjoin enforcement of the above-named Social Security provision and to compel Defendant Burson to adopt standards of assistance "which reflect present costs of living and are sufficient for human subsistence in health and dignity."

Defendant Finch, the Secretary of Health, Education, and Welfare, has filed a motion to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction over the Secretary, and failure to state a claim upon which relief can be granted. Plaintiffs have filed a motion for summary judgment. Following a hearing on July 2, 1970, the case was taken under advisement by the court. For the reasons set forth below the court concludes that the action must be dismissed as to both defendants.

The record shows that Plaintiff Stinson receives benefits under both the Federal Old Age, Survivors, and Disability Benefits program (OASDI), which is operated pursuant to Title II of the Social Security Act (42 U.S.C. §§ 401–429), and the Georgia program for Aid to the Aged, Blind, or Disabled (AABD), which is operated with federal financial assistance pursuant to Title XVI of the Social Security Act (42 U.S. C. §§ 1381–1385). Plaintiff Matthews receives benefits under both the Federal OASDI program and the Georgia Aid to Families with Dependent Children (AFDC), which is operated with federal financial assistance pursuant to Title IV, Part A, of the Social Security Act (42 U.S.C. § 601 et seq.). It is not clear from the record what forms of public as-

sistance, if any, Plaintiff McMullen receives.

The allegations of the complaint appear to relate to two completely separate and independent claims. The first claim is that of Plaintiff Stinson relating to the constitutionality of § 1007 of the Social Security Amendments of 1969 (as to which Plaintiff Matthews has no interest since she does not receive public assistance funds under any program which is affected by that statute),[1] and the second is that of Plaintiff Matthews regarding the inadequacy of standards of assistance used by the Georgia Department of Family and Children Services. It is not clear from the record whether the other plaintiffs, Stinson and McMullen, are also challenging the inadequacy of standards, but for purposes of this opinion the court assumes that they are.

### ADEQUACY OF STANDARDS OF NEED

■■ We deal first with plaintiffs' claim that the standards of assistance for welfare budgets enforced under the authority of Defendant Burson do not comport with present costs of living and do not accurately reflect the actual amounts which must be spent by welfare recipients for items such as shelter, food and clothing. Plaintiffs' contention that a state's inadequate standards of assistance violate rights accruing under the Equal Protection and Due Process Clauses of the Fourteenth Amendment, the AFDC sections of the Social Security Act (42 U.S.C. § 601 et seq.), and the peonage prohibition of 42 U.S.C. § 1994, is without merit. It has long been recognized that the states have undisputed power to determine both the standard of need and the level of benefits for their public assistance programs:

"There is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard

---

1. Titles I, X, XIV, and XVI are affected by § 1007, whereas Plaintiff Matthews receives public assistance funds only un-der the AFDC program which is regulated by Title IV.

of need and to determine the level of benefits by the amount of funds it devotes to the program." King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

In the instant case it is not contended that the state is using a discriminatory classification scheme which prefers one group of welfare recipients over another. Rather, plaintiff merely contends that the standards of need are inadequate— an argument which is foreclosed by the United States Supreme Court's decisions in such cases as King v. Smith, *supra;* Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), and Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). We therefore hold that in challenging the state standards of assistance plaintiffs have failed to state a claim upon which relief can be granted.

## CONSTITUTIONALITY OF § 1007 OF SOCIAL SECURITY AMENDMENTS OF 1969

■ As a general rule federal law requires that in determining need for purposes of federally subsidized public assistance programs all of an applicant's other income and resources must be taken into consideration.[2] As a result, when a welfare recipient's other income is increased his welfare benefits ordinarily will be decreased. But when Congress enacted the Tax Reform Act of 1969, which among other things increased OASDI benefits by approximately 15% to compensate for recent increases in the cost of living, it took steps to insure that individuals who receive both OASDI and other public assistance funds would not have their "other" welfare funds cut by the full amount of their OASDI increase. To this end, § 1007 of the Social Security Amendments provides that for those individuals who are concurrent beneficiaries of OASDI benefits and state adult public assistance programs the State must provide that the total amount received monthly by such individuals under the two programs be increased by $4.00 or by the actual amount of the increase in their OASDI benefits if that increase was less than $4.00.[3] In other words, § 1007 varies the general rule that *all* income must be considered in determining need for certain federally subsidized welfare programs by providing that the first $4.00 of the OASDI increase is *not* to be

2. *E. g.,* 42 U.S.C. § 1382(a) provides that "A State plan for aid to the aged, blind, or disabled * * * must * * * (14) provide that the State agency shall, in determining need * * * take into consideration any other income and resources of an individual claiming such aid." Section 602(a) has a similar provision with regard to needy families.

3. Plaintiffs object to the following portion of Title X of the Tax Reform Act of 1969:
"*SEC. 1007. DISREGARDING OF INCOME OF OASDI RECIPIENTS IN DETERMINING NEED FOR PUBLIC ASSISTANCE.*
"In addition to the requirements imposed by law as a condition of approval of a State plan to provide aid or assistance in the form of money payments to individuals under title I, X, XIV, or XVI of the Social Security Act, there is hereby imposed the requirement (and the plan shall be deemed to require) that, in the case of any individual receiving aid or assistance for any month after March 1970 and before July 1970 who also receives in such month a monthly insurance benefit under title II of such Act which is increased as a result of the enactment of the other provisions of this title, the sum of the aid or assistance received by him for such month, plus the monthly insurance benefit received by him in such month (not including any part of such benefit which is disregarded under section 1006), shall exceed the sum of the aid or assistance which would have been received by him for such month under such plan as in effect for March 1970, plus the monthly insurance benefit which would have been received by him in such month without regard to the other provisions of this title, by an amount equal to $4 or (if less) to such increase in his monthly insurance benefit under such title II (whether such excess is brought about by disregarding a portion of such monthly insurance benefit or otherwise)." 1969 U.S.Code Cong. & Admin.News, 91st Cong., 1st Sess., p. 822.

counted as "other income." The statute thereby gives concurrent recipients an over-all increase in benefits which without the statute they could not have had.

■ The gist of Plaintiff Stinson's complaint is that although the Social Security Amendments provide for a 15% increase in OASDI benefits she, as a recipient of both AABD and OASDI benefits, does not realize a 15% increase in over-all income because the increase in her OASDI benefits results in a corresponding decrease in her AABD benefits except for the $4.00 over-all increase required by § 1007. She contends, therefore, that § 1007 of the Social Security Amendments discriminates invidiously against those whose "other income" is derived from public assistance programs, thereby denying equal protection under the laws and giving rise to a claim under 42 U.S.C. § 1983 over which this court has jurisdiction under 28 U.S.C. §§ 1343 (3), 1346(a) (2), 2281, 2282, and 2284.[4]

■ The jurisdictional allegations as to the last four sections are patently without merit: § 1346(a) (2) does not provide jurisdiction where equitable relief is sought but by its express terms provides jurisdiction only as to money claims not exceeding $10,000 in amount, while §§ 2281, 2282, and 2284 are not jurisdictional statutes at all.[5] Furthermore, the first-named section, 28 U.S.C. § 1343(3), cannot give this court jurisdiction over plaintiffs' claim that the Social Security Act is unconstitutional, because that section provides a federal forum without regard to jurisdictional amount only when constitutional rights allegedly have been violated by those acting under color of State law. It, like 42 U.S.C. § 1983, has no application whatever when the acts complained of are done pursuant to or under color of federal law.[6]

■ Plaintiffs in the instant case recognize this distinction but contend that the requisite "color of state law" can be found in the State's implementation of the provisions of the challenged federal statute. Under their view of the matter Defendant Finch, a federal employee, is acting under color of state law because he is acting in concert with state officials who are acting under color of state law (*i. e.*, state policies formulated to give effect to the federal statute), but this circuitous reasoning does not bring either Finch or Burson within the provisions of § 1983 for purposes of challenging the constitutionality of the Social Security Amendments.[7] Indeed, this court can conceive of no circumstances in which

---

4. Since this claim is entirely independent of the adequacy-of-state standards claim, independent grounds of jurisdiction are also required. *See* Notes of Advisory Committee, Rule 18, Federal Rules of Civil Procedure.

5. 28 U.S.C. § 2281 requires a three-judge court to hear and determine applications for injunctions against enforcement of allegedly unconstitutional state statutes; § 2282 makes similar provisions where federal statutes are involved; § 2284 sets forth the composition and procedure of the three-judge district court required by the preceding statutes.

6. Section 1343(3) of the Judicial Code gives the district courts original jurisdiction "of any civil action authorized by law to be commenced by any person * * * (3) To redress the deprivation, under color of any State law * * * of any right * * * secured [1] by the Con-

stitution of the United States or [2] by any Act of Congress providing for equal rights * * *." It is clear that for jurisdiction to exist under this statute the *deprivation* must be under color of state law, although the right may be one protected either by the Federal Constitution or by an Act of Congress providing for equal rights, e. g., the Civil Rights Acts.

Section 1983 of Title 42, U.S.C., gives rise to a cause of action for deprivation of federally protected rights by conduct engaged in under color of state law.

7. An allegation that state officials are acting in concert with federal officials under color of federal law might have substance (though it would not create a § 1983 claim), but to say that federal officials are conspiring with state officials under color of state law when a federal law authorizes or requires the complained-of acts is utterly frivolous.

a § 1983 claim can have its origin, and federal jurisdiction under 28 U.S.C. § 1343(3) can be predicated upon, a deprivation of rights resulting from an allegedly unconstitutional federal statute. This is obviously true with regard to a federal employee whose every official act is done pursuant to or under color of federal law, but it is equally true as to a state official who is carrying out at the state level the mandate of an Act of Congress. To the extent that a state official's authority to act in a particular matter derives from federal law he is acting under color of federal law rather than under color of state law and a constitutional attack upon the authorizing statute will be within the district court's original jurisdicion only if the requisite jurisdictional amount is involved,[8] a requirement which clearly is not fulfilled in the instant case. The court therefore concludes that plaintiff's contention that the state's implementation of an allegedly unconstitutional federal statute deprives her of rights "under color of state law" is wholly insufficient to give this court jurisdiction under 28 U.S.C. § 1343.[9]

There is yet another reason why the instant action is not maintainable as to Defendant Finch, i. e., lack of personal jurisdiction. Defendant Finch contends that under Federal Rule 4(d) (5) and 4 (f) personal jurisdiction over a federal officer can be acquired only by making personal service on that officer within the territorial limits of the state in which the court sits unless extraterritorial service of process is authorized by federal statute. Plaintiffs urge the court to interpret the special venue and service-of-process provisions of 28 U.S.C. § 1391 (e) liberally so as to permit this court to acquire personal jurisdiction over Defendant Finch by delivering a copy of the summons and complaint by certified mail.[10] The gist of plaintiff's contention

8. If a federal official is named as a defendant in such a suit he may remove the action to federal court under 28 U.S.C. § 1442, but the mere fact that the district court would have removal jurisdiction cannot justify its assumption of original jurisdiction where the requirements of § 1331 are not met.

9. Although we cannot and do not reach the merits of the constitutional attack, we note that if plaintiffs should prevail on the merits § 1007 would be unenforceable, and pursuant to other federal statutes the full amount of the OASDI benefits would have to be taken into account by the states for the purposes of their federally supported state welfare programs, i. e., none of the OASDI increase then would be excludable.

We note, too, that although plaintiffs apparently take the view that if the district court does not have original jurisdiction of this action they will have no forum at all, that view is erroneous. The district courts are courts of limited jurisdiction and much of their original jurisdiction is concurrent with the jurisdiction of the state courts. Congress has decreed that cases involving federal questions may be brought in the federal courts only if they are of such magnitude that they involve amounts in excess of $10,000, except in those instances where a special jurisdictional statute gives jurisdiction without regard to the amount involved. Accordingly, plaintiffs who wish a federal forum often seek to avoid the jurisdictional amount requirement of 28 U.S.C. § 1332 by alleging that their claim is a civil rights one arising under 42 U.S.C. § 1983. When the court finds that the claim does not arise under § 1983 it does not, as plaintiffs contend, deprive the plaintiffs of an opportunity to litigate their claim; it merely sends them to the state courts where Congress has decreed that they shall go if the amount involved is $10,000 or less.

10. Section 1391(e) of Title 28 provides that:
"A civil action in which *each defendant is an officer or employee of the United States or any agency thereof* acting in his official capacity or under color of legal authority may be brought in any judicial district in which (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) *the plaintiff resides if no real property is involved in the action.* [Emphasis supplied.]

"The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and

is that the "each" in the statute refers to each defendant who is outside the court's jurisdiction.[11] However, the statute by its express terms applies only to actions in which *each* defendant is a United States officer and employee—a condition which is not met in the instant case—and this court declines to hold that personal jurisdiction exists when Congress has plainly decreed otherwise.[12]

To summarize, plaintiffs' claim that the Georgia standards of need are inadequate is DISMISSED for failure to state a claim upon which relief can be granted; the claim that § 1007 of the Social Security Amendments of 1969 is unconstitutional is DISMISSED as to both defendants for lack of jurisdiction over the subject matter and, as to Defendant Finch, alternatively, for want of personal jurisdiction over that defendant.

Accordingly, the action is dismissed.

HOOPER, Senior District Judge, concurring.

I concur in the judgment of my brother judges dismissing the instant action. However, I would rule that this court has personal jurisdiction over Secretary Finch pursuant to 28 U.S.C.A. § 1391(e), although a narrow construction of that section would support a ruling that there is no such jurisdiction. I believe the better view is expressed by the Second Circuit in the case of Kletschka v. Driver (2d Cir., Apr. 1969) 411 F.2d 436 (3, at p. 442).

complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought."

11. And there are cases so holding, *see, e. g.*, Powelton Civic Home Owners Ass'n. v. Dept. of Housing & Urban Development, 284 F.Supp. 809 (E.D.Pa.1968); Brotherhood of Locomotive Engineers v. Denver & R. G. R. R., 290 F.Supp. 612 (D. Colo.1968).

12. We note also that plaintiffs are in the anomalous position of urging on the one hand that subject matter jurisdiction under § 1343(3) exists because Finch is acting under color of state law, and, on the other hand, that this court has personal jurisdiction over Finch under § 1391(e), which requires that he be acting pursuant to or under color of federal law.