Annie Mae **ROBERTS** et al.,

v.

John **HARDER**, Connecticut Welfare Commissioner.

Civ. No. 13964.

United States District Court,
D. Connecticut.

Nov. 10, 1970.

**1314**

William H. Clendenen, Jr., David M. Lesser, New Haven, Conn., for plaintiffs.

James M. Higgins, Asst. Atty. Gen., State of Connecticut, East Hartford, Conn., for defendant.

## RULING ON MOTION TO CONVENE A THREE-JUDGE DISTRICT COURT

BLUMENFELD, District Judge.

The plaintiff, Annie Mae Roberts, seeks a declaration pursuant to 28 U.S.C. § 2201 that the provisions of Connecticut's Public Act 299, Conn.Gen.Stats. § 17–2f, violate her rights to due process and equal protection under the fourteenth amendment of the United States Constitution, and requests a permanent injunction which would enjoin the State Commissioner of Welfare from enforcing and applying its provisions. The plaintiff relies upon the Civil Rights Act, 42 U.S.C. § 1983, to afford relief for the alleged deprivation of her constitutional rights. Jurisdiction is sought under 28 U.S.C. § 1343(3). Because of the nature of the relief sought, the plaintiff has filed a motion that a three-judge district court be convened pursuant to the provisions of 28 U.S.C. § 2284.

### Jurisdiction

■ Before considering whether a three-judge district court is required to adjudicate the plaintiff's claim, it must first be decided whether her claim is one over which a federal district court of any composition may exercise jurisdiction.[1] Thompson v. New York Cent. R. R., 361 F.2d 137, 144–145 (2d Cir.1966); Cover v. Schwartz, 133 F.2d 541, 546 (2d Cir.1942), cert. denied, 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1943); see Lion Mfg. Corp. v. Kennedy, 117 U.S.App.D.C. 367, 330 F.2d 833, 840–841 (1964). Federal jurisdiction under 28 U.S.C. § 1343(3) requires that the claim asserted be one to "redress the deprivation of a right, privilege or immunity secured by the Constitution of the United States * * *." Authoritative interpretation of the quoted language in the context of federal jurisdiction limits its application to cases alleging deprivations only of a right "of personal liberty, not dependent for its existence upon the infringement of property rights * * *." Hague v. CIO, 307 U.S. 496, 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423 (opinion of Mr. Justice Stone). See Eisen v. Eastman, 421 F.2d 560, 566 (2d Cir.1969). See also, McCall v. Shapiro, 416 F.2d 246 (2d Cir.1969); Bradford Audio Corp. v. Pious, 392 F.2d 67, 72 (2d Cir.1968); Johnson v. Harder, 318 F.Supp. 1274 (D.Conn.1970). Thus, the allegation that the plaintiff was not afforded due process or was denied equal protection, without more, is not a sufficient basis for § 1343(3) jurisdiction. The significant element is the nature of the right allegedly infringed by the denial of those constitutional safeguards. Bourque v. Shapiro, 319 F.Supp. 729 (D.Conn.1970).

### Nature of the Right

In essence the plaintiff's contention is that denial of constitutional safeguards has deprived her of her right to receive

---

1. The defendant in this case has submitted a motion for summary judgment. In view of this court's obligation to consider whether federal jurisdiction exists, and its disposition of the case on jurisdictional grounds, consideration of defendant's motion is unnecessary.

welfare assistance in the form of direct money payments rather than vendor payments. The factual background out of which that contention is extracted is as follows.

Plaintiff Roberts receives assistance from the Connecticut State Welfare Department under the program entitled Aid to Families with Dependent Children (AFDC). She did not receive her AFDC check dated January 1, 1970, and signed an affidavit so stating on January 5, 1970, in order to receive a duplicate check. This check did not arrive until January 23, 1970.

She promptly notified her landlord that she would be unable to pay her rent until the duplicate check arrived. She also informed her caseworker, who attempted to contact and discuss the matter with the landlord. On January 14, 1970, the landlord took advantage of Public Act 299,[2] Conn.Gen.Stats. § 17–2f, by making a written complaint to the State Welfare Department requesting vendor payment of plaintiff's rent. As stipulated by that law, the state granted the landlord's request and will continue to pay him directly for plaintiff's rent until her tenancy ceases.

In June of 1970, plaintiff was accorded a fair hearing to challenge these payments of rent directly to the landlord. The following facts were determined: (1) The nonpayment of rent in January occurred through no fault of the plaintiff. Despite this fact, the State Welfare Department is mandated by law to make and continue vendor payments to the landlord. (2) Vendor payments were initiated before plaintiff had an opportunity for a hearing.

The plaintiff contends that a right to direct payment arises out of the philosophical premise that a welfare system should promote the recipient's personal dignity and independence. Persuasive arguments can be made that as a matter of social policy an eligible recipient of welfare assistance generally should receive it in the form of a direct money payment. In an HEW report to the House Ways and Means Committee and the Senate Committee on Finance, January 1969, the general proposition is stated:

"There is ample evidence in welfare history that the money payment made directly to the needy individual preserves his sense of dignity and pride and allows responsibility in management of his own affairs as a necessary step to economic independence."

On the other hand, the report also recognizes that there should be protective or vendor payments for certain services, and also that where a needy individual is incapable of managing direct money payments, for him to receive a money payment would be contrary to his welfare.

2. Public Act 299, Conn.Gen.Stats. § 17–2f, provides:

"(a) In any case involving a tenancy from month to month or for a term of years calling for monthly rental payments, upon written complaint, under oath, made by the landlord of a welfare recipient, to the district director of the welfare district office handling the welfare payment in such case, that such welfare recipient has failed to make payment of rent for the current month, after ten days subsequent to the date when such rent was due, all subsequent rental payments, until the termination of the tenancy or until the tenant quits the premises, shall be made directly to the landlord, and the amount of such rental shall not be included in the payment made to such welfare recipient.

"(b) Such written complaint shall be subscribed and sworn to by the landlord, shall state the name and address of the landlord, the name and address of the tenant, the term of the tenancy, the amount of the monthly rental and the date such rent became due and shall contain a statement that (1) the rent for the current month is due and owing; (2) the landlord has himself made a bona fide effort to collect such rent; (3) the landlord has notified or has made a bona fide effort to notify the tenant of his intention to seek payment of rents from the welfare department; and (4) the nonpayment of rent is not the result of any act or omission on the part of the landlord. Such complaint shall be accompanied by a copy of the lease, if any, and a copy of the notice required by subdivision (3) hereof."

Thus seen, even as remote a source for constitutional rights as the policy statement of HEW to the Congress does not suggest that the recipient has an unqualified right to receive payments in a manner which enhances his dignity and self-respect.

As applied to this specific case of rental payments, the plaintiff. contends that her right to dignity has been impaired because she has been deprived of the economic power to force the landlord to improve the leased premises, a power which she could exercise by withholding the rent or participating in a tenants' action against her landlord. Her claim that exercise of that power would be effective, however, is more ephemeral than those ignorant of the law would be likely to expect.[3] *See generally*, Walsh, Slum Housing, 40 Conn. Bar Journal 539 (1966); Levi, Focal Leverage Points in Problems Relating to Real Property, 66 Colum.L.Rev. 275 (1966). It is not poor tenants only who yearn for more effective weapons than the threat of withholding rent payments with which to confront reluctant landlords.[4]

Although administratively significant, payment of the rent by a welfare recipient herself is not relevant to the basic purpose of welfare assistance. Certainly the alleged right to receive shelter only in the form of direct money payments to the welfare recipient does not "involve the *most basic economic needs* of impoverished human beings," Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970) (emphasis added), or "the very means by which to live" or render the plaintiff's situation "immediately desperate." Goldberg v. Kelly, 397 U.S. 254, 264, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *See also*, Shapiro v. Thompson, 394 U.S. 618, 627, 89 S.Ct. 1322, 1327, 22 L.Ed.2d 600 (1969) (denial of aid "upon which may depend the ability of the families to obtain the very means to subsist"); King v. Smith, 392 U.S. 309, 334, 88 S.Ct. 2128, 2142, 20 L.Ed.2d 1118 (1968) ("destitute children \* \* \* flatly de-

---

3. The statutory summary process action to evict a tenant upon termination of her lease for nonpayment of rent is sui generis. The only issue is the right to possession. *Cf.* Webb v. Ambler, 125 Conn. 543, 550–551, 7 A.2d 228 (1939); Sun Oil v. Keane, 2 Conn.Cir. 524, 525 n. 1, 203 A.2d 88 (1964).

4. Connecticut currently provides by statute a number of perhaps more effective "weapons" which a tenant may exercise against his landlord.

Section 47–24 of the Connecticut General Statutes provides that a tenant is not liable for rental payments while the leased premises are untenantable. Section 47–24b implies a covenant of fitness for habitation into all parol leases for real property so that all tenants are protected by this statutory right not to pay rent. But this statute has no reference to ordinary repairs. *See* Hatch v. Stamper, 42 Conn. 28, 30 (1875).

Section 7–148b, Conn.Gen.Stats. provides that any town may establish a fair rent commission to investigate and receive complaints of excessive rents. After a hearing, the commission may order a reduction of the rental payments, pursuant to § 7–148d, and sus-

pend the landlord's right to all rental payments until he remedies any outstanding violation of a municipal ordinance, state statute or regulation relating to health or safety.

Public Act 728, Conn.Gen.Stats. §§ 19–347j to 19–347p, passed in the January 1969 session of the Connecticut Legislature, authorizes tenants to deposit rents in court in order to remedy conditions hazardous to life, health or safety in their leased premises. After a hearing before a referee, the Circuit Court can enter a judgment pursuant to which all subsequent rents may be paid to a receiver, who will apply such rents to the repair or removal of the existing dangerous conditions.

The plaintiff in this case alleges that she is being deprived of her right to use these statutory remedies, because she has no control over her rental payments. However, there is no indication that the State Welfare Department could not or would not exercise these rights in the plaintiff's behalf, and withhold her rental payments pursuant to a court order under § 19–347r, a commission order under § 7–148d, or a finding of untenantability under § 47–24.

nied \* \* \* assistance"); Goldberg v. Kelly, *supra*, 397 U.S. at 261, 90 S.Ct. at 1017 ("brutal need").

■ Since any loss of "dignity" occasioned by the vendor payments of rent bears no relation to the amount or quality of shelter which this welfare recipient is afforded, payments by that method cannot be held to have deprived the plaintiff of any of the means to subsist. It follows that federal jurisdiction in this case cannot be founded on 28 U.S.C. § 1343(3) because plaintiff has failed to allege an infringement of a right of personal liberty.

While federal jurisdiction is not proper in this case, the necessity for any court to consider the question raised should have been avoided.[5] The state authorities charged with the responsibility of interpreting Public Act 299 ought to have heeded the admonition of Judge Learned Hand in Guiseppi v. Walling, 144 F.2d 608, 624 (2d Cir.1944), aff'd, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945), that "there is no surer way to misread any document than to read it literally." It is obvious that the legislature did not envision the application of the statute to a case where the failure of a beneficiary to pay the rent on time was attributable solely to the mistakes or inefficiencies of the welfare department. Although it was a mistaken view to hold the recipient to a standard of perfection which the statute never intended, no remedy lies in this court. Federal courts are not empowered to review every aspect of a state's administration of its system of welfare assistance.

The action is dismissed for lack of jurisdiction over the subject matter.

So ordered.

---

5. Counsel for the defendant commissioner stated that federal funds are not sought or obtained by the state as reimbursement for any portion of vendor rental payments. Thus, there is not the slightest federal coloration to this claim. *Cf.* Rosado v. Wyman, 397 U.S. 397, 422–423, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).