**Beaty Mae GILLIARD et al., Plaintiffs,**

v.

**Clifton M. CRAIG, individually and as North Carolina Commissioner of Social Services, et al., Defendants.**

**Civ. A. No. 2660.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

Heard Nov. 5, 1970.

Decided June 10, 1971.

**588**

Gail F. Barber and Thomas W. Pulliam, Jr., Legal Aid Society of Mecklenburg County, Charlotte, N. C., for plaintiffs.

James O. Cobb, Ruff, Perry, Bond, Cobb & Wade, Charlotte, N. C., and L. P. Covington, Staff Atty., Raleigh, N. C., for defendants.

## MEMORANDUM OF DECISION AND ORDER

Before CRAVEN, Circuit Judge, JONES, Chief District Judge and McMILLAN, District Judge.

McMILLAN, District Judge:

### PRELIMINARY STATEMENT

This case was heard in Charlotte on November 5, 1970, before a three-judge court. The plaintiffs, individually and for the class of themselves and others similarly situated, seek declaratory and injunctive relief from policies and actions of the defendants which reduce benefits available to plaintiffs under the Social Security Act, Title 42, U.S.C., Section 601, et seq., and which policies and actions plaintiffs say violate the Social Security Act and the equal protection clause and the due process clause of the Fourteenth Amendment.

### THE CLASS

Plaintiffs sue individually and as members of a class of persons who have been or may be subject to reduction of AFDC (Aid to Families with Dependent Children) benefits based upon unconstitutional or illegal claim of credit by administering agencies for outside income and other resources available to some but not all of a family group. The action is properly maintainable as a class action.

### THE FACTS

The plaintiffs are Beaty Mae Gilliard; her seven children including Samuel Davis, Jr.; and Samuel Odell Davis. Samuel Odell Davis is the father of Samuel Davis, Jr., the youngest child, born in November, 1969, but is not the father of any of the other children. On April 6, 1970, Samuel Davis, Jr. was legitimatized in a proceeding conducted under North Caro-

lina General Statutes, Section 49–10, with the result that his father became legally obligated to provide for his support.

Before Samuel Davis, Jr., was born, Beaty Mae Gilliard and her other six children were receiving financial benefits under the AFDC program, which was established by subchapter 4 of the Social Security Act of 1935, as amended, 42 U.S.C., Section 601, et seq. This program is jointly funded by federal, state and local governments. It is administered statewide in North Carolina by the North Carolina Board of Social Services and the North Carolina Commissioner of Social Services and is administered in Mecklenburg County by the Mecklenburg County Department of Social Services.

Before the birth of Samuel Davis, Jr., the amount of benefits the Gilliards were receiving under the AFDC program was about $217 per month. After Samuel Davis, Jr. was born, he was added to the family group of beneficiaries, and the family's allowance was increased from about $217 a month to about $227 a month.

However, Samuel Davis, Sr. began making regular payments of $43.33 per month ($10 per week) to support Samuel Davis, Jr., and when the defendants learned this, they reduced the monthly AFDC payments by $43.33, effective in March, 1970, and since that time the AFDC payments have been only $184 a month instead of the former $227.

■ Appeal to the State Commissioner produced an affirmance of the decision to reduce the Gilliard's benefits. This exhausts state administrative remedies. Exhaustion of state judicial remedies is not required. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); 68 Columbia Law Review, 1201 (1968).

Defendants say that the payments by Samuel Davis, Sr. are a resource available to the family and that the full amount of such payments should be deducted from benefits otherwise payable. Plaintiffs contend that the payments to young Davis are available to him alone; that they are his property, not his mother's and not the property of the family at large; and that the action of the defendants in charging the entire $43.33 against the AFDC allowance is discriminatory against all plaintiffs, both under the due process and equal protection clauses of the Fourteenth Amendment to the Constitution, and as a matter of proper interpretation of the federal statutes and the state regulations.

## THE STATUTES AND REGULATIONS

The federal statute which regulates the distribution of benefits is 42 U.S.C., Section 602(a) (7), which reads:

"A State plan for aid and services to needy families with children must * * * (7) * * * provide that the State agency shall, in determining need, take into consideration any other income and resources of any *child* or relative *claiming aid* to families with dependent children, or of any *other individual* (*living in the same home* as such child and relative) whose needs the State determines should be considered in determining the need *of the child* or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income; * * *." (Emphasis added.)

The statewide regulations on which the defendants based their ruling are Section 301 of the North Carolina Public Assistance Manual, which says that

"In AFDC, the budget is to include all *eligible* children in the home * * *" (Emphasis added)

and Section 320 of the Manual, providing that

"* * * all income and any other resources *immediately and regularly available* must be taken into consideration." (Emphasis added.)

A portion of a regulation similar in principle is subsection I(B) (8) of Section 2321 of the North Carolina Depart-

ment of Social Services Welfare Program Manual:

"*Support Payments*—In AFDC cases where the parent who has deserted or abandoned the family and has been located, or where the parent is separated from the familly, the monthly amount that the court orders him/her to pay is to be entered in the budget as a resource.

"a. If the payments are not made in accordance with the court order, the amount must be eliminated from the budget as a resource or reduced to the amount actually being contributed by the parent."

In a case (Long v. Commissioner, Case No. 8053) arising in Forsyth County, North Carolina, the Commissioner ruled on October 30, 1970, ostensibly upon the authority of subsection I(B) (8) of Section 2321, that the amount of the support payments received by "one of [the] children" of an AFDC family pursuant to a court order was properly deducted by the County Department from the family's AFDC grant.

Apparently overlooked by the defendants in the Forsyth County case and in the case at bar was the main or parent paragraph of subsection I(B) of Section 2321 of the Manual, which since July 1, 1969, has provided in pertinent part, as a statewide regulation, that:

"* * * all cash income regularly available *to the family* must be considered in determining resources. This includes but is not limited to: amounts received from OASDI (verified), V.A., Workmen's Compensation, etc., dividends earned from savings, stocks, bonds, insurance policies, and other investments; cash regularly contributed *to the family*; and net cash derived from wages; net income from rental of rooms or real estate; net farm income; or net income from other sources * * *." (Emphasis added.)

The natural implication of the emphasized phrase is that for income or contributions to be counted as available in determining resources they should be available *to the family* and not just to one of its members.

At the time the defendants made their ruling in the Gilliard case in March of 1970, there was apparently no federal regulation which expressly controls this situation. However, on the 25th day of September, 1970, in a nationwide directive (Exhibit P) to affected state agencies, the Department of Health, Education and Welfare ruled that in the future, if one child of a group receiving AFDC payments should become also entitled to other *federal* aid under the Old Age Survivors and Disability Insurance (OASDI) provisions of the Act, the additional payment to or for the child should be counted as a resource *available only to that child*. This federal ruling does not decide the issue presented on the particular facts of this case, but it does embrace the principle contended for by the plaintiffs—the principle that assets belonging to one potential member of the group of beneficiaries may not be treated as assets available to the entire group.

## JURISDICTION

◼ The complaint alleges a cause of action cognizable under 42 U.S.C., Section 1983 [1] and within the jurisdiction of a district court under 28 U.S.C., Section 1343.[2] Since the complaint also

---

1. 42 U.S.C., Section 1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. 28 U.S.C., Section 1343(3), (4): "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right,

seeks injunction restraining state officials and agencies from enforcing or carrying out statewide statutes and regulations upon grounds of unconstitutionality of the statutes and regulations, the case was heard by a three-judge court under 28 U.S.C., Section 2281.[3]

The defendants contend, however, citing Stinson v. Finch, 317 F.Supp. 581 (3–J. Court, N.D.Ga., 1970), that because 42 U.S.C., Section 602(a) (7) requires agencies administering state AFDC plans to take into consideration "other income and resources of any child" in the home, in determining the need "of the child," the actions of the defendants are under color of federal rather than state law; that no cause of action is stated under Section 1983; and that this court does not have jurisdiction under Section 1343.

We are unable to agree with this contention. To begin with, as a matter of statutory interpretation, it is highly doubtful that Section 602(a) (7) requires or even contemplates that the independent resources of one child should be made available to the rest of the household; if Section 602(a) (7) provides a "color" of federal law, its hue is not the one visualized by defendants. In the second place, participation by the state in AFDC is not required but voluntary; implementation is left to the states; the authority of the defendants is under state statutes (see North Carolina General Statutes, Sections 108–1 to 108–19); and the discrimination under attack is based directly on statewide state regulations. We think there is ad-

equate color of statewide law and regulation to satisfy Sections 1983 and 1343.

The defendants say further that the court does not have jurisdiction over the subject matter because the suit does not challenge the deprivation of a "civil right" of "personal liberty" but only the deprivation of a property right. They rely on Justice Stone's opinion in Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), in which Justice Stone said (at 307 U.S. 531–532, 59 S. Ct. 971):

> "* * * [W]henever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights, there is jurisdiction in the district court under [the Civil Rights Act] * * *."

The defendants also rely on McCall v. Shapiro, 416 F.2d 246 (2nd Cir., 1969), and Eisen v. Eastman, 421 F.2d 560 (2nd Cir., 1969).

We do not believe that this case is controlled by *Hague, McCall* and *Eisen.* In four cases decided after *Hague* [King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); and Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)] the Supreme Court has found jurisdiction on jurisdictional facts not materially different from the facts before this court. Although the Supreme Court did not in those cases expressly consider the "property right" language of

privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

3. 28 U.S.C., Section 2281: "An interlocutory or permanent injunction restraining the enforcement, operation or execution

of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

Justice Stone, it can not be assumed that these decisions were entered in ignorance or unintended disregard of Hague v. C.I.O.

Moreover, some recent decisions have recognized a reasonable interpretation of Justice Stone's opinion which would support jurisdiction in welfare cases where plaintiffs allege deprivation of benefits vital to their subsistence. In *Eisen*, for example, Circuit Judge Friendly observed that King v. Smith, although it disregards Justice Stone's comment in *Hague,* arguably falls within *Hague* because the defendants in *Eisen* had infringed upon Mrs. Smith's off-springs' " * * * 'liberty' to grow up with financial aid for their subsistence * * *" (421 F.2d 560 at 564); and in Taylor v. New York City Transit Authority, 309 F.Supp. 785, at 789 (E.D. N.Y., 1970), affirmed 433 F.2d 665 (2nd Cir., 1970). Judge Weinstein, in applying Justice Stone's formulation to the context of an employment discharge case, said:

> "Certainly it cannot seriously be contended that a man's liberty is not diminished when he is denied the option of remaining in a government job vital to his own and his family's sustenance. Life is a predicate for the exercise of the freedom to speak protected in *Hague.*"

See also, Lynch v. Household Finance Corporation, 318 F.Supp. 1111 (D.Conn., 1970); Weddle v. Director, Patuxent Institution, 436 F.2d 342 (4th Cir., 1970); Roberts v. Harder, 320 F.Supp. 1313 (D.Conn., 1970); Campagnuolo v. Harder, 319 F.Supp. 414 (D.Conn., 1970); Russo v. Shapiro, 309 F.Supp. 385 (D. Conn., 1969); Johnson v. Harder, 438 F.2d 7 (2nd Cir., 1971).

It takes little imagination to see that the maximum amount of each monthly AFDC payment is vital to the subsistence of Mrs. Gilliard and her children. If Judge Friendly's as-yet dimly described principle states a constitutional right, it obviously applies to eight people living in the 1970's inflation on $227 a month.

Therefore, either under King v. Smith and other recent decisions of the Supreme Court, or under the theory that in this nation children have a right to subsistence and that infringement upon that right is a deprivation of personal liberty, we conclude that a cause of action is properly alleged under Section 1983 and that there is jurisdiction under section 1343.

■ Since this court's jurisdiction to decide the substantial constitutional issues presented in this case is properly invoked, we think it appropriate on the basis of United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), and Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), to exercise pendent jurisdiction over any non-constitutional issues of interpretation of statutes or regulations which the action may present. These issues are also appropriately before the three-judge court. Florida Lime and Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80 S. Ct. 568, 4 L.Ed.2d 568 (1960), 67 Columbia Law Review 84, at 108–109.

### THE MERITS OF THE CASE

■ Having fought through the procedural and jurisdictional questions, and a lengthy set of Social Security and Welfare regulations, we find the ultimate merits of the case to be relatively uncomplicated. They are viewed by us as follows:

(a) *All plaintiffs are threatened by the defendants' action.*—Mrs. Gilliard's gross funds available to support six children are reduced by $43 a month. Her problems of existence, already difficult, become more complicated. She faces the Hobson's choice of applying Davis's contribution to benefit only Samuel Davis, Jr., or of improperly using some or all of Davis's contribution for the benefit of herself and the other children. The original six children, already on a "bare minimum" program, must either exist on less, or become beneficiaries of the contribution of Samuel Davis, Sr., which

he and his son have the right to expect will go to support only Samuel Davis, Jr. The daily necessity for such decision puts a moral and legal burden on Mrs. Gilliard to add to her obvious economic burden; the creation of such a burden is an unfair discrimination.

▇ (b) *Inclusion of Samuel Davis, Jr. in the "class" against the will of his parents violates the Social Security Act.* —The obvious intent of Sections 601, et seq. of the Social Security Act is to provide assistance only to needy children. In particular, see Sections 601, 602(a) (7), and 606(a). See also, King v. Smith, 392 U.S. at pages 319–320, 88 S. Ct. 2128, standards of need are determined by the states (Sections 601 and 602(a) (7), note 14, King v. Smith, *supra*. The state-determined need of Samuel Davis, Jr. is $11.50 a month (Section 2310, North Carolina Department of Social Services Welfare Programs Manual), 86% of which AFDC would provide. The child's income is $43.33 a month. He is therefore ineligible for AFDC and his inclusion in the Gilliards' AFDC budget (at least, in the absence of parental consent) is violative of the Social Security Act.

(c) *The inclusion of support payments belonging to Samuel Davis, Jr. as a resource available to the entire family works an unlawful appropriation of the funds of both father and son, and violates the intent and meaning of the federal statute and the North Carolina regulations themselves.*—As previously noted, the *North Carolina Department of Social Services Welfare Programs Manual,* Section I(B) of Section 2321, does not require assimilation of resources available only to individual members of the family, but requires simply that income and contributions regularly available *"to the family"* be considered. The defendants appear to have overlooked this, their own regulation, in deciding the Gilliard case. They also appear to have overlooked the limitations of 42 U.S.C., Section 602(a) (7) which, as we read it, authorizes state agencies administering the plan to consider resources of a child in determining the needs *of the child,* but does not require nor authorize that the resources available only to a child living in the home should be treated as resources available to the family at large.

(d) *The defendants improperly presumed that the support payments by Samuel O. Davis were available to the family at large.*—Recent decisions have made it clear that those administering aid to dependent children may not presume the availability to an AFDC family of the income of a "man in the house" or a man assuming the role of spouse or a stepfather owing no legal duty of support. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128 (1968); Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); Solman v. Shapiro, 300 F.Supp. 409 (D.Conn., 1969) (affirmed 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969)). If the income of an individual with no legal duty of support is not available to the family, then on like principle the contribution to the support of Samuel Davis, Jr. by one having no legal duty to support the rest of the family can not be considered a resource available to that family.

## CONCLUSION

Both under the most rational interpretation of 42 U.S.C., Section 602(a) (7), and under the State's own regulations, it is improper to include as family resources support payments belonging individually to Samuel Davis, Jr. Samuel Davis, Jr. is not a proper member of the group because he is not a "needy" child under the Social Security Act. The Gilliards, absent some relevant change in their family status since the evidence was taken, are entitled to a restoration of the payments at the rate of approximately $217 a month, retroactive to March, 1970, when the reduction originally took place. The defendants may not under the law reduce or continue to withhold the payment of AFDC benefits to members of the Gilliard family or any others of the class represented by the Gilliard family because of the presumed

availability to an AFDC family of support payments which belong to one or more but not all of the members of that family.

NOTE: This decision, substantially arrived at earlier this year, has been reconsidered and reheard in view of Harris v. Younger, et al.; the court finds that the *Younger* cases are inapplicable to the situation presented here and do not indicate any change in the decision above outlined.

WOODROW WILSON JONES, Chief District Judge (dissenting).

The majority brushes aside the question of jurisdiction and the advisability of applying the doctrine of abstention, and reaches the merits of this case. It then proceeds to strike down, as violative of the equal protection clause, and in contravention of the Social Security Act and State regulations, a North Carolina rule, decision or regulation relative to payments made to families under the program known as Aid for Families with Dependent Children (AFDC). With such decision, I respectfully dissent.

There is a grave question of jurisdiction involved here. Plaintiffs bottom their action on 42 U.S.C.A., 1983, and 42 U.S.C.A., 601, et seq., and allege jurisdiction exists under 28 U.S.C.A., 1343(3) and 1343(4). The defendants move to dismiss for lack of jurisdiction over the subject matter, and cite and rely upon Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423, and the Second Circuit cases of Eisen v. Eastman, 421 F.2d 560 (2 Cir.1969), and McCall v. Shapiro, 416 F.2d 246 (2 Cir.1969).

Justice Stone's formulation set forth in Hague v. C.I.O. *supra*, declaring that the special jurisdictional statute, 28 U.S.C.A., 1343(3) applies "Whenever the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights", is apparently regarded as the law in the Second Circuit. In *Eisen*, Judge Friendly, in speaking for the court said: "We therefore hold, al-though with a good deal less than complete assurance, that Justice Stone's *Hague* formulation, generously construed, should continue to be regarded as the law of this circuit. Since the complaint here alleged only the loss of money, the district court's conclusion that jurisdiction under the Civil Rights Act was not established, although predicated on a wrong reason, was thus correct." In *McCall*, the Second Circuit held, with Judge Smith writing the opinion: "It is reasonably clear then that Section 1343(3) and (4) dealing with statutes providing for 'equal rights' and 'civil rights' were aimed at questions of personal liberty rather than property matters, and that the latter are relegated to the general provisions of 28 U.S.C. § 1331(a)."

Justice Stone's formulation has been recognized as the law in this circuit. On March 2, 1971, in the case of Garren v. City of Winston-Salem, 439 F.2d 140 (4th Cir.1971), the court declared:

"But we are nevertheless convinced by the heavy weight of the case law that plaintiffs have not stated a claim cognizable under Section 1983 for which jurisdiction is conferred by Section 1343(3). The language of Section 1983 granting redress for the deprivation of any right, privilege or immunity has been consistently construed to embrace only a right, privilege or immunity pertaining to 'personal liberty, not dependent for its existence upon the infringement of property rights,' i.e. see Hague v. Committee for Industrial Organization, 307 U.S. 496 at 531, 59 S.Ct. 954 at 971, 83 L.Ed. 1423 (Mr. Justice Stone's opinion); Weddle v. Director, Patuxent Institution, 436 F.2d 342 (4th Cir.)"

In *Weddle*, the court held:

"Where, as here, the infringement is one solely of property rights, § 1331 is the applicable jurisdictional statute, and jurisdiction may be sustained only upon satisfaction of the amount in controversy requirement." See Howard v. Higgins, 379 F.2d 227 (10th

Cir.1967); Ream v. Handley, 359 F.2d 728 (7th Cir.1966); Willis v. Reddin, 418 F.2d 702 (9th Cir.1969); Abernathy v. Carpenter, 208 F.Supp. 793 (W.D.Mo.1962), affirmed 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409.

There is indeed a strong argument that the basis of plaintiffs' complaint is an alleged denial of property rights and therefore not cognizable under Section 1983.

The Social Security Act, 42 U.S.C.A., 601, et seq. is a law of the United States securing to its citizens certain rights, privileges or immunities and a cause of action would accrue in favor of the plaintiffs, if these rights and privileges were deprived under color of any state law, rule or regulation. However, it appears that such claims must meet federal "question" jurisdictional requirements of 28 U.S.C.A., 1331(a). The difference between the actual payment and the demands of the plaintiffs is only a few dollars per month and the total sum of this difference during the dependency of the minor plaintiffs would not equal the required jurisdictional amount. The jurisdiction of federal courts is determined by the Congress and not by the personal sympathies of judges.

I am not inadvertent to King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) and the other cases cited and relied upon by the majority for jurisdictional purposes. While all four cases deal with welfare matters the applicability of the Civil Rights Act was neither challenged nor discussed. *King* was decided before *Eisen* and the Second Circuit distinguished the cases. However, in all candor I must admit that an inference may be drawn from these four Supreme Court decisions indicating jurisdiction in the case at bar, so, assuming arguendo, that this court has jurisdiction, we then come face to face with the doctrine of abstention.

The plaintiffs set forth in their brief the four conditions proposed by the American Law Institute which must be fulfilled before the abstention doctrine applies. These conditions are:

"(1) That the issues of state law cannot be satisfactorily determined in the light of the state authorities;

"(2) That abstention from the exercise of federal jurisdiction is warranted either by the likelihood that the necessity for deciding a substantial question of federal constitutional law may thereby be avoided, or by a serious danger of embarrassing the effectuation of state policies by a decision of state law at variance with the view which may ultimately be taken by the state court, or by other circumstances of like character;

"(3) That a plain, speedy and efficient remedy may be had in the courts of such state, and

"(4) That the parties' claim of federal right, if any, including any issues of fact material thereto, can be adequately protected by review of the state court decision by the Supreme Court of the United States." ALI Study–1969.

It is apparent to me that this case satisfied all four conditions. The Supreme Court in the case of Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68, recently reversed a three-judge court decision which had proceeded to strike down as unconstitutional certain fishing laws of the State of Alaska. The court declared:

"A state court decision here, however, could conceivably avoid any decision under the Fourteenth Amendment and would avoid any possible irritant in the federal-state relationship. * * * We think the federal court should have stayed its hand while the parties repaired to the state courts for a resolution of their state constitutional questions."

More recently, the Supreme Court in Department of Social Services of Iowa v. Dimery, 398 U.S. 322, 90 S.Ct. 1871, 26 L.Ed.2d 265 (1970), vacated the judgment and remanded to the district court for reconsideration in light of Reetz v. Bozanich, *supra,* a decision wherein the district court had declared a regulation

of the State of Iowa unconstitutional which restricted eligibility for medical assistance under the AFDC law.

Admittedly, the question involved here has constitutional ramifications for it is difficult to find many legal problems these days which do not. There were constitutional questions involved in *Reetz* and *Dimery*—matters of due process and equal protection of the law. But in those cases as in the case at bar, the basic questions were property rights. While these rights and all other basic rights are protected by the Constitution, it does not follow that the federal courts must, or have authority to adjudicate all controversies in the land. If the federal courts attempt to settle all disputes involving aid to dependent children and other welfare matters, there will be no time or room for anything else.

The plaintiffs apparently exhausted their administrative remedies but did not pursue their judicial remedies in state court. The majority recognizes a state law question dealing with property rights, and decides it. There is no reason shown in this record to indicate that the state courts could not adjudicate both the constitutional and state law questions raised in this complaint. I would without hesitation apply the doctrine of abstention, and, as Justice Douglas said in *Reetz,* let the parties repair to the state courts for a resolution of this matter.

However, if the merits are reached, the case of Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), is decisive of this controversy. In *Dandridge* a three-judge court struck down as violative of the equal protection clause, a Maryland plan of aid to dependent children which contained a maximum grant regardless of the number of children in the family. The Supreme Court *reversed,* saying:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classification made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S. Ct. 337, 340, 55 L.Ed. 369." "* * * 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393."

Here the plaintiffs contend it unfair and unconstitutional for the State to consider the payment made by the plaintiff, Samuel Davis, for the support of his son, Samuel Davis, Jr., a resource available to the entire Gilliard family. This rule results in a lower payment from AFDC funds to the Gilliard household. The record shows that no objections were made by plaintiffs, Gilliard and Davis, when the decision was made to consider Samuel Davis, Jr., a part of the entire family for the payment of past, present and future hospital and medical bills. But now, to include his support payments as a resource of the entire family, they say, raises serious constitutional questions, requiring the convening of a three-judge court to strike down the practice and regulation. As the court said in *Dandridge*:

"We do not decide today that the Maryland regulation is wise, that it best fulfills the relevant social and economic objectives that Maryland might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d

287. But the constitution does not empower this court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients."

Here there is a "reasonable basis" for the regulation and it can clearly be justified. The need of dependent children is an evergrowing problem and there is a limited amount of funds. There is a legitimate state interest in allocating the available public funds in such a way as to meet the needs of the largest possible number of dependent children and families. The regulation is wholly free of any invidiously discriminatory purpose or effect.

If the merits are reached by this court, *Dandridge* directs that the action be dismissed.