**BROTHERHOOD OF LOCOMOTIVE EN-GINEERS, a Labor Organization, Plaintiff,**

v.

**DENVER & RIO GRANDE WESTERN RAILROAD COMPANY, a corporation, Brotherhood of Locomotive Firemen & Enginemen, a labor organization, National Mediation Board, an Executive Agency of the Federal Government, Howard G. Gamser, Leverette Edwards and Francis A. O'Neill, Jr., members of the Mediation Board, Defendants.**

**Civ. A. C-717.**

United States District Court
D. Colorado.

Sept. 9, 1968.

---

Philip Hornbein, Jr., Denver, Colo., and Harold A. Ross, Cleveland, Ohio, for plaintiff Brotherhood of Locomotive Engineers.

Kenneth D. Barrows, Jr., Denver, Colo., for defendant Denver & R. G. W. R. Co.

Alden T. Hill, Fort Collins, Colo., and Harold C. Heiss and Donald W. Bennett, Cleveland, Ohio, for defendant Brotherhood of Locomotive Firemen & Enginemen.

Edwin L. Weisl, Jr., Asst. Atty. Gen., Dept. of Justice, Washington, D. C., and Lawrence M. Henry, U. S. Atty., Denver, Colo., for defendants National Mediation Bd., Howard G. Gamser, Leverett Edwards and Francis A. O'Neill, Jr.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This matter is before the Court on the motions to dismiss of the defendant National Mediation Board (hereinafter referred to as the NMB) and its individual members and the defendant Brotherhood of Locomotive Firemen & Enginemen (hereinafter referred to as the BLF&E).

### I.

The NMB asserts two grounds for dismissal: 1) lack of personal jurisdiction and 2) improper venue.

The objection to personal jurisdiction arises from the fact that the NMB and its members were not personally served within the territorial limits of the District of Colorado. Rather, these parties were served by delivering copies of the summons and complaint to the United States Attorney for the District of Colorado, sending copies of the summons and complaint by certified mail to the NMB and its members in the District of Columbia, and sending copies of the summons and complaint by certified mail to the United States Attorney General in the District of Columbia. The NMB thus urges that this Court lacks jurisdiction over the person of the Board and its members by virtue of Rule 4(f) of the Federal Rules of Civil Procedure which provides that "[a]ll process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state."

The NMB further urges that 28 U.S.C. § 1391(e) is here unavailable as a statutory exception to the limitation of Rule 4(f). That section contains expanded venue provisions for actions in which each defendant is a federal officer, employee, or agency and further provides that in such actions service shall be made "as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought." In the present action, service was had in compliance with section 1391(e) and Rule 4(d), (5), but the NMB contends that such service was to no avail since "each" defendant is not a federal officer or agency.

■ Though the literal wording of the statute and one case which follows that literal wording, Chase Savings & Loan Ass'n v. Federal Home Loan Bank Board, 269 F.Supp. 965 (E.D.Pa.1967), support the NMB's position, this Court is of the opinion that the absurd result which derives from such a construction should be avoided and that instead the spirit and purpose of section 1391(e) should be adhered to in accord with the decision in Powelton Civic Home Owners Ass'n v. Department of Housing & Urban Dev., 284 F.Supp. 809 (E.D.Pa.1968).

The evident legislative purpose behind section 1391(e) was simply to alleviate the burdensome situation under prior service and venue rules which could force a plaintiff suing federal officers or agencies to bring his action in the District of Columbia regardless of other circumstances, see U.S.Cong. & Admin. News, 2784–90 (1962), and to deny its applicability in the instant case would serve no apparent end. Further, acceptance of defendants' tendered interpretation would likely make it impossible for plaintiff to prosecute in a single suit an action such as the present at all since the defendants other than the NMB could probably not be served in the District of Columbia nor would venue properly lie in that district as to those other defendants.

As was stated in the *Powelton* case,

Since the consequence of the defendants' argument is so inconsistent with the apparent intent of Section 1391(e), we believe it is appropriate to look beyond the literal language of the provision; and we conclude that the requirement that "each defendant" be a *federal* defendant refers only to defendants who are *beyond* the forum's territorial limits. Thus the joining of a non-federal defendant located within the forum's territorial limits and adequately served under F.R.Civ. P. 4(f) has no effect on the applicability or operation of Section 1391(e). Indeed, any other conclusion would appear entirely illogical. Section 1391 (e), as an exception to Rule 4(f), is an authorization of extra-territorial service of process. Its force begins to operate only when Rule 4(f) cannot provide adequate service. It would be absurd to conclude that the operative force of the provision is abrogated by the presence of an additional defendant who can be adequately served within the power of Rule 4(f). The presence of parties who can and have been served under Rule 4(f) is simply not relevant to the extra-territorial operation of Section 1391(e). 284 F.Supp. at 833–834.

Since section 1391(e) is properly applicable in the instant case, the defendant NMB's objection to venue must also fall. As against the NMB particularly, venue is proper in this district under section 1391(e) by virtue of plaintiff's residence here; unincorporated associations are to be viewed, for venue purposes, as residents of any district where they are doing business. See Denver & Rio Grande Western R. R. Co. v. Brotherhood of Railroad Trainmen, 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967). Venue is also proper against the NMB and all other defendants under section 1391(b) and (e) since it is in this district that the cause, or causes, of action, if any, arose.

Manifestly, such is the case as to claims detailed in part II of this memorandum against the defendant railroad and union. And it is also the conclusion of the Court that any claim that might exist against the NMB for injunctive relief should also be considered as arising in this district. Though the particular action which plaintiff seeks to enjoin would be taken in the District of Columbia where the NMB is headquartered, the impact and operation of any such action would be felt in this district and it is here, therefore, that the cause of action arises. Cf. Montana-Dakota Utilities Co. v. Public Service Commission of Montana, 111 Mont. 78, 107 P.2d 533 (1940); Cecil v. Superior Court, 59 Cal.App.2d 793, 140 P.2d 125 (1943). "It is not the mere making of the order, but the place where it is put in operation, that determines where the cause of action arose." Montana-Dakota Utilities Co. v. Public Service Commission of Montana, 111 Mont. 78, 107 P.2d 533, 534 (1940).

## II.

In addition to matters going to the presence of the NMB in this action which are disposed of in the foregoing, the defendant BLF&E seeks dismissal on the following grounds: 1) lack of subject matter jurisdiction and 2) failure to state a claim for relief.

In essence, plaintiff Brotherhood of Locomotive Engineers' (hereinafter referred to as the BLE) complaint alleges the following: A special board of adjustment, Public Law Board No. 137, has been established at the instance of the defendant BLF&E. Under the opinion of a procedural neutral member and the pursuant agreement, dated January 31, 1968, this Board has asserted jurisdiction to consider the claims and disputes of certain employees of the Denver & Rio Grande Western Railroad Company (hereinafter referred to as the railroad), which claims arose in the course of employment in the craft of locomotive engineers, for which craft the plaintiff BLE is the duly authorized collective bargaining agent under the Railway Labor Act, 45 U.S.C. § 151 et seq., as amended, and involve the interpretation and application of the collective bargaining agreement executed on behalf of that craft by the plaintiff BLE. However, the Court understands and plaintiff's counsel admits in his brief and oral argument, that these employees, though employed in the craft of locomotive engineers at the time their claims arose, are members of the defendant BLF&E and have therefore authorized that union rather than the BLE to represent them in their grievances.

Plaintiff contends that a special board of adjustment convened at the instance of the BLF&E and composed of a representative of that union, the railroad, and, should they be unable to agree, a neutral member on the merits appointed by the NMB, is, under the Railway Labor Act, 45 U.S.C. § 153, Second, without jurisdiction to consider employee grievance claims arising out of employment in the craft of locomotive engineers and which involve interpretation and application of the collective bargaining agreement executed on behalf of that craft by the plaintiff BLE, even though the particular employees involved are not members of the BLE. Plaintiff further contends that to allow a board so constituted and on which plaintiff is without representation or power of decision to make a determination binding on the rights of plaintiff and its members would constitute a violation of due process of law under the Fifth Amendment.

Therefore, plaintiff asks that this Court grant the following relief: 1) a declaration that the January 31, 1968 opinion of the procedural neutral and the agreement executed by the neutral and the BLF&E establishing the jurisdiction of Public Law Board No. 137 is invalid; 2) an injunction prohibiting the defendant BLF&E and the defendant railroad from utilizing the special board of adjustment procedures to bargain about, agree upon, or execute an award as to claims or disputes relating to the craft of locomotive engineers; and 3) an injunction prohibiting the defendant NMB from appointing a neutral member to Board No. 137 to consider claims or disputes relating to the craft of locomotive engineers and which involve interpretation and application of the collective bargaining agreement executed on behalf of that craft by the plaintiff, and from requiring the defendant railroad to engage in the special board procedures with the defendant BLF&E on such claims.

■ The first point to be considered is the jurisdiction of this Court and whether a justiciable controversy is presented. This is an action under an act regulating commerce, the Railway Labor Act, 45 U.S.C. § 151 et seq., and jurisdiction is thus properly founded under 28 U.S.C. § 1337 provided that the present dispute is not one which is removed, either initially or completely, from judicial competency by that Act.

■ It is established that many types of disputes arising under that Act are not for judicial resolution, and, more particularly, that what are loosely termed "jurisdictional disputes" are not to be determined by the courts. This principle has been applied when the jurisdictional dispute concerns which craft is entitled to perform certain work, Slocum v. Delaware, Lackawanna & Western R. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950), which union is the proper collec-

618

tive bargaining representative, Switchmen's Union v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L. Ed. 61 (1943); General Committee v. Missouri-Kansas-Texas R. R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 (1943), or which union is the proper grievance representative, General Committee v. Southern Pac. Co., 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85 (1943). The present dispute is one concerning grievance representation and, as was the case in General Committee v. Southern Pac. Co., supra, it involves the problem of which union is the proper representative for the presentation of certain employee claims.

However, the instant case differs significantly from these prior decisions denying jurisdiction in that the basic question here is whether a statutory board is presuming to act beyond its authorization. The question is not one of who is the proper representative in a general context. Nor does the present action comprise a minor dispute "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" under 45 U.S.C. § 153, First (i), which should be referred to the National Railroad Adjustment Board or other of the statutory boards or agencies.

 The problem here is whether a statutory board, comprised essentially of private parties and empowered by Congress to make binding awards on grievance claims, is in excess of its jurisdiction. Not only is it a common function of the judiciary to ascertain whether statutory agencies and boards are proceeding within their authorization, but the Railway Labor Act itself, in 45 U.S.C. § 153, First (p), (q) and Second, specifically confers upon the federal courts the duty to determine that board jurisdiction is not exceeded. While judicial review powers are severely limited under the Act, the power to examine board jurisdiction is preserved. See Brotherhood of Railroad Trainmen v. Denver & Rio Grande Western R. R. Co.,

370 F.2d 833 (10th Cir. 1966), cert. denied, 386 U.S. 1018, 87 S.Ct. 1375, 18 L. Ed.2d 456 (1967).

Having favorably determined the issue of subject matter jurisdiction, the remaining question is whether the complaint states a claim upon which relief can be granted. The specific issue is whether one union (the BLF&E) can utilize the special board of adjustment machinery of 45 U.S.C. § 153, Second, to resolve with the railroad the grievance claims of its members when these claims arose out of employment in a craft for which another union (the BLE) is the exclusive collective bargaining agent under the Act and involve the interpretation and application of the collective bargaining agreement executed by such other union.

 Since there is no allegation that the particular claims and disputes themselves are not of the sort properly referable to a special adjustment board, the remaining basis for an objection to the jurisdiction of the board is that it has not, as to the particular claims, been convened by a proper party and is thus improperly constituted in its membership. The peculiar structure of special adjustment boards makes it imperative that its membership be proper since interested parties are given the power of decision.

The contention that Board No. 137 is without jurisdiction can be advanced on two levels: 1) by arguing that, as a general proposition, the Railway Labor Act precludes grievance representation by a union which is not the authorized collective bargaining representative of the craft out of which the claim arose, at least when disposition of that claim involves the interpretation or application of that craft's collective bargaining agreement; or 2) by arguing that under 45 U.S.C. § 153, Second, a special board of adjustment cannot be established at the instance of a union which is not the authorized collective bargaining agent for the craft in which the particular employee was employed when his claim arose.

As to the first suggested proposition, it is established by the decision in *Elgin, Joliet & Eastern Ry. Co. v. Burley*, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), that under the Railway Labor Act the collective bargaining representative for a craft is not, by virtue of its status as such, the exclusive representative of employees in that craft for the purpose of processing and settling grievances through conference or before the National Railroad Adjustment Board. More fundamentally, the decision establishes that there are distinctions between representation for purposes of bargaining and for purposes of grievance adjustment.

Reasoning from *Elgin*, the Seventh Circuit in *McElroy v. Terminal R. R. Ass'n*, 392 F.2d 966 (7th Cir.), petition for cert. filed, 37 U.S.L.W. 3433 (U.S. May 10, 1968), concluded that employees under the Act have the right to be represented in their grievances by a union which is not the collective bargaining representative of the craft in which they were employed when the claims arose. The court stated that "if, as here, individual employees do not care to be represented by the majority union in the processing of minor disputes, they should be able to choose their own union for that purpose." 392 F.2d at 970.

Since the Act, particularly in 45 U.S.C. §§ 152, Second, Third, Fourth, Sixth and 153, First (j), and the *Elgin* case establish and confirm the right of an individual employee to participate in the resolution of his grievances, it follows that an employee is free to designate a union other than the collective bargaining representative to engage in the process on his behalf. Thus, the Court concludes that the Railway Labor Act does not, as a general proposition, preclude grievance representation by a union other than that which is the authorized collective bargaining representative for the craft out of which the claim arose.

The next question, therefore, is whether the specific statutory provisions of 45 U.S.C. § 153, Second, governing special adjustment boards preclude the invocation of such boards by an employee representative other than the authorized collective bargaining representative for the craft out of which the claim arose. This Court is of the opinion that they do not.

Section 153, Second, provides for the establishment of a special board of adjustment upon the request of the carrier or the "representative of any craft or class of employees of such carrier" for the resolution of disputes "otherwise referable to the Adjustment Board." Plaintiff contends that this language limits invocation of a special board to the authorized collective bargaining representative of the craft out of which the claim arose. In support of this contention, plaintiff offers the fact that a House subcommittee heard testimony that the language of the provision did have such a limited effect and yet reported out the bill without alteration. However, this cannot provide a basis for resolution of the question since it is supportive of two equally reasonable inferences—either the committee agreed with the testimony but chose not to change the language or it disagreed with that interpretation and thus saw no need for alteration.

Moreover, acceptance of plaintiff's position requires making an inference, not unreasonable at first glance, that Congress, when it used the words, "representative of any craft or class of employees," also meant that the particular claims must have arisen out of employment in *that* craft or class and that it was, in the first instance, referring specifically to the "collective bargaining representative."

The legislative history of the 1966 amendment providing for special boards insofar as it has been presented by counsel and insofar as it is stated in U.S.Cong. & Admin.News 2285–90 (1966) is of little aid in determining the intent of the legislature on this matter. It does, however, reflect that the sole purpose of the enactment was to provide an efficient alternative to processing

minor disputes through the National Railroad Adjustment Board which had become engulfed in a huge backlog of disputes in certain of its divisions. The First Division of the Adjustment Board, to which the present grievances would apparently be referable, was reported in Senate Report No. 1201 to have a backlog of seven and one-half years work. U.S.Cong. & Admin.News, 2285, 2286 (1966). In view of this situation, it would not be in keeping with the spirit of the enactment to impose restrictions on the availability of special boards which are neither warranted by the specific wording of the act nor supported by persuasive reasons.

 The wording of the provision manifests an intent to make special board jurisdiction coextensive with that of the Adjustment Board; it gives the special board jurisdiction over disputes "otherwise referable" to the Adjustment Board. Furthermore, there is no reason to suppose that Congress has, by one innocuous phrase, chosen for purposes of special boards to obliterate the distinction drawn by the Act and the *Elgin* case between representation in major and minor disputes. There is a legitimate question as to why the words "representative of any craft or class" were used in section 153, Second, rather than the words "employee or group of employees" which were used in section 153, First, to define those who may petition the Adjustment Board. Though a determination of this question can only be the result of speculation, the following passage from Senate Report No. 1201 is of some aid.

When either party requests a special adjustment board, the committee contemplates that a number of disputes will be referred to that board. The committee believes it would only result in a proliferation of special boards to request a special board for each claim presented by an employee. U.S.Cong. & Admin.News, 2285, 2286 (1966).

Requiring that the representative of any craft or class invoke the special board operates as some assurance that such a board will consider a number of disputes rather than be a merely one-shot affair.

The final matter to be considered, in relation to the plaintiff's due process objections as well as the questions of grievance representation rights under the Act in general and section 153, Second, in particular, is the relevance of the fact that resolution of these particular grievance claims allegedly involves interpretation and application of the plaintiff BLE's collective bargaining contract and the concomitant problem of binding effect, if any, on the rights of plaintiff.

 Even if it is assumed, and the Court does not purport to now decide the issue, that interpretation of the collective agreement in the process of grievance resolution is the exclusive function of the authorized collective bargaining agent which negotiated the contract, cf. Hughes Tool Co. v. NLRB, 147 F.2d 69, 158 A.L.R. 1165 (5th Cir. 1945), the Court is of the opinion that plaintiff's complaint reveals that its rights in this respect are fully protected. The January 31, 1968 agreement establishing the jurisdiction of Board No. 137, which is attached to and made a part of plaintiff's complaint, contains the following provision:

If any claim or grievance involves an employee while engaged in work subject to any rule contained in an agreement other than that between this Organization [BLF&E] and the Carrier, such claim or grievance will be disposed of under the recognized interpretation placed upon the schedule rule involved by the officials of the Company and the General Committee of the organization making that agreement, and the Board shall forthwith make written request for the delivery to it of such interpretation within thirty days. In the absence of such established interpretation placed upon the schedule rule involved, the award issued in resolving the claim or grievance shall not constitute a precedent as to the inter-

pretation or application of such schedule rule.

The provision is explained in the opinion of the procedural neutral in the following words:

It [the BLF&E] accordingly agrees that in its representation of its members in any dispute which involves a provision of the Intervenor's [the BLE] Agreement, the latter is entitled and shall be requested by the Board to make an interpretation thereof, which shall govern and control the Organization's handling of such case.

Further provision is made for the giving of notice and opportunity to be heard to any interested third parties, and it is finally provided that awards shall be binding on all involved, including third parties.

 These provisions, should they be followed, adequately protect the legal interests of the plaintiff; under these provisions the BLF&E will not engage in the interpretation of the BLE's contract. Admittedly, should the agreement be ignored serious and difficult questions under the Railway Labor Act and the due process clause of the Fifth Amendment would be raised. The existence of a collective interest in the settlement of grievance disputes is recognized, see Elgin, Joliet & Eastern Ry. Co. v. Burley, 325 U.S. 711, 737–738 & n. 35, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), and special boards of this type are subject to due process limitations. Cf. Brotherhood of Railroad Trainmen v. Chicago, M., St. P. & P. R. R. Co., 237 F.Supp. 404, 418 (D.D.C.1964), rev'd on other grounds, 120 U.S.App.D.C. 295, 345 F.2d 985 (1965).

 However, Board No. 137 has as yet made no award on the merits of the grievances and the Court cannot presume that it will violate the terms of its establishing agreement. Insofar as plaintiff's complaint alleges that the Board will illegally engage in collective bargaining and interpretation of its contract, the controversy is not yet ripe for judicial determination. The Court should not intervene in the Board procedure when the only basis for such intervention is the prognostication that the Board will or might exceed the bounds of its power as defined by the Act and the agreement establishing its existence.

 The same is true as to plaintiff's contention, made in oral argument, that the Board has already violated the terms of the agreement by asserting jurisdiction to consider these particular grievance claims since, under the BLE's interpretation of its contract, there is no basis for such claims. This contention confuses the questions of whether a board has jurisdiction to consider a claim and whether in fact the claim is valid. The Board has yet to determine the claims on the merits and it still may decide that on the merits there are no claims. In view of this situation, it would be premature for the Court to preclude the Board from acting. Similarly, the lack of any concrete situation or controversy precludes any consideration of the extent to which, if at all, the plaintiff may be bound by Board actions.

In conclusion, the Court is of the opinion that it does have jurisdiction of the subject matter of this action, but that the complaint fails to state a claim upon which relief can be granted since Board No. 137 is, by the agreement establishing its existence, within its statutory authorization. Insofar as the possibility exists that the terms of the agreement will be exceeded, the complaint fails for want of ripeness.

Accordingly, it is

Ordered that the complaint and cause of action be and hereby are dismissed.