WILLIAMS EXPLORATION COMPANY,
Rudman Resources, Inc., C.F. Braun &
Co., Inc., Raymond A. Williams, Jr.,
Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
ENERGY and Charles W. Duncan,
Secretary of Energy, Defendants.

No. 80–C–476–B.

United States District Court,
N.D. Oklahoma.

Dec. 24, 1980.

Fred Nelson, J. Clayton La Grone, Kent L. Jones, Karen M. Richardson, Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, Okl., for plaintiffs.

Hubert A. Marlow, Asst. U.S. Atty., Tulsa, Okl., Larry Ellsworth, Mark Kreitman, Beth N. Mizuno, Dept. of Energy, Office of General Counsel, Regulatory Litigation Section, Washington, D.C., for defendants.

ORDER

BRETT, District Judge.

There is presently before the Court the plaintiffs' request for preliminary injunction, as well as the defendants' Motion to Dismiss. Oral argument was had on October 1, 1980. At the conclusion of the hearing the parties were granted additional time to submit supplemental legal authority.

Plaintiffs seek a preliminary injunction enjoining and restraining defendants from application and enforcement of Ruling 1980–3 to their T.E. Mudd No. 1 Well in North Creole Field, Cameron Parish, Louisiana. Ruling 1980–3 was promulgated by the defendant, United States Department of Energy, as an interpretative ruling.

10 C.F.R. § 212.70 defines "newly discovered crude oil" as crude oil produced from a property "from which no crude oil was produced in calendar year 1978." Ruling

1980–3 "concludes that any recovery of oil from a well during 1978 . . . constitutes 'production' which precludes classification of that well as 'newly discovered crude oil.'" Plaintiffs contend the word "produced" means oil produced in commercial quantities and not test oil recovered from initial completion. The quantity of test oil produced from the particular property in 1978 was approximately 1,458 barrels. (Plaintiffs' Brief of September 16, 1980, p. 7) Plaintiffs further contend Ruling 1980–3 misapplies the Incentive Regulations and is invalid.

MOTION TO DISMISS

Defendants have moved to dismiss on venue grounds pursuant to F.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1406(a). In the defendants' brief they assert an alternative theory to dismissal, that of transfer of this case to the District of Columbia pursuant to § 1406(a). Plaintiffs argue venue is proper in suits against federal officers in any judicial district in which "the cause of action arose." 28 U.S.C. § 1391(e)(2); page 2 of plaintiff's brief, October 30, 1980.

Plaintiff, Williams Exploration Company (WXC) is incorporated under the laws of Delaware with its principal place of business in Tulsa, Oklahoma. Plaintiff, Rudman Resources, Inc., (Rudman) is incorporated under the laws of the State of Texas, with its principal place of business in Dallas, Texas. Plaintiff, C.F. Braun & Co. (Braun) is incorporated under the laws of the State of Delaware with its principal place of business in Dallas, Texas. Plaintiff, Raymond A. Williams, Jr. (Williams), is an officer of Rudman and resides in Dallas, Texas. The United States Department of Energy, as well as the Secretary of that agency, reside in the District of Columbia.

Plaintiffs have submitted the affidavit of Donald R. Wills, Vice-President of WXC (attached to plaintiff's brief of October 23, 1980), wherein he states: The principal place of business, with all of the chief executive officers and principal managerial personnel of WXC are located in Tulsa, Oklahoma. WXC is the operator of the Mudd Well in Louisiana. All final decisions concerning the wells operated by WXC, including the Mudd Well are made in Tulsa, Oklahoma, and all decisions concerning the certification under federal crude oil pricing regulations of wells operated by WXC are made in Tulsa, Oklahoma. All financial decisions relating to the collection and distribution of revenues from production of wells operated by WXC are made in Tulsa, Oklahoma. The purchaser of the production from the Mudd Well is located in Tulsa, Oklahoma. The contract governing the sales of such production was entered in Tulsa, Oklahoma.

The defendants argue the challenged Ruling was promulgated in the District of Columbia; the underlying regulation interpreted by the Ruling was formulated and promulgated in the District of Columbia; and the notices of proposed and final rule making were likewise promulgated and published in the District of Columbia.

*Title 28 U.S.C. § 1391(e)* provides, in pertinent part:

"A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color or legal authority, or an agency of the United States, or the United States, may except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action..."

*Title 28 U.S.C. § 1406(a)* provides:

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The Court concludes if venue be proper in this case, it can only be under § 1391(e)(2). There is no question this action could have been brought in the District of Columbia pursuant to § 1391(e)(1). It is also clear the residence of a corporate plain-

tiff for venue purposes under § 1391(e)(4) is restricted to the place of incorporation. See *Amoco Production Co. v. United States Dept.,* 469 F.Supp. 236, 243 (USDC Del. 1979). There is no claim by plaintiffs or defendants venue is proper here under § 1391(e)(3) because the producing property is located in Louisiana.

Plaintiffs, in support of their position on venue, primarily rely on two cases, i.e., *Brotherhood of Locomotive Eng. v. Denver R.G.W.R.Co.,* 290 F.Supp. 612 (USDC Colo. 1969), affirmed on other grounds, 411 F.2d 1115 (10th Cir.1969) and the unpublished Order in *UPG, Inc. v. James R. Schlesinger, etc., et al.,* United States District Court, Western District of Oklahoma, CIV–79–370–E, filed August 14, 1979.

Defendants basically rely on the cases of *Ruben H. Donnelley Corp. v. F.T.C.,* 580 F.2d 264 (7th Cir.1978); *Leroy v. Great Western United Corporation,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979); and *Exxon Corp. v. DOE,* No. 3–78–0420–W (N.D.Tex. June 1, 1979).

In the *Exxon Corp.,* case, *supra,* DOE issued an NOPV [Notice of Probable Violation] to Exxon. Thereafter Exxon filed suit in Texas seeking declaratory and injunctive relief. DOE then filed an enforcement action in the District of Columbia. DOE withdrew the NOPV and filed a Motion to Dismiss the Texas case for improper venue or to transfer the case to the District of Columbia where the enforcement action was pending. Exxon attempted to "sidestep the venue issues raised in defendant's motion by filing an amended complaint naming numerous additional plaintiffs." Although Exxon was admittedly not a resident of Texas, some of the newly added plaintiffs were residents of the State of Texas. After the amended complaint was filed, DOE filed a new motion to dismiss or transfer. The opinion of the Court in this case is somewhat ambiguous. At page 3 of the Order the Court states: "The cause of action did not arise in the Northern District of Texas. Only the validity of the DOE rulings is in question. Those rulings were promulgated, formulated, and enacted in the District of Columbia. Neither party contends that the lawsuit involves real property situated in the Northern District of Texas." At the bottom of page 3 of the trial court's order and continuing on page 4 the Court said: "In view of this court's decision to transfer this cause of action to the District Court for the District of Columbia [under § 1404(a) for the convenience of the parties and witnesses and in the interest of justice], no resolution of the issue of frivolous claims is necessary here; nor is it necessary to determine whether venue is proper here under 28 U.S.C. § 1391(e)."

■ Exxon therefore is not persuasive in the application of 28 U.S.C. § 1391(e). The better reasoned view is found in *UPG, Inc. v. James R. Schlesinger, etc., et al., supra,* in which the "impact test" of *Brotherhood of Locomotive Eng. v. Denver R.G.W.R. Co., supra,* 290 F.Supp. 612, is followed. In *UPG, Inc.,* the Court was confronted with DOE's contention the cause of action arose in Washington, D.C., where the interpretation was promulgated. *UPG, Inc.,* contended the cause of action arose in the district where the purchases and sales of the residue in question were predominantly made, that is, where the interpretations would have their impact. The *UPG, Inc.,* Court considered the affidavit of the Vice-President and General Manager of the corporation to the effect that the greater percentage of its purchases and sales of the residue in question had been in the Western District of Oklahoma. Venue was permitted in the Western District by 28 U.S.C. § 1391(e)(2). The Court finds herein the impact and operation of the interpretative Ruling will be principally felt in this district, and it is, therefore, here that the cause of action arises. (A copy of the *UPG* opinion is attached.)

The Court, therefore, finds the defendants' Motion to Dismiss predicated on improper venue should be overruled, the Court having determined venue in this case is proper pursuant to 28 U.S.C. § 1391(e)(2), applying the "impact test."

**468**

## PRELIMINARY INJUNCTION

When considering the request for a preliminary injunction the Court applies the following criteria:

(1) The evidence demonstrates the applicant has a likelihood of success on the merits;

(2) The applicant will suffer irreparable injury if the injunction is denied;

(3) The effect issuance of the injunction will have on interested parties against whom it will operate; and

(4) Public policy considerations.

■ It is not necessary that the moving party's right to a final decision be wholly without doubt; rather the burden is on the party seeking relief to make a prima facie case showing a reasonable probability of prevailing on the merits. See *Croskey Street Concerned Citizens v. Romney*, 459 F.2d 109, 111 (3rd Cir.1972); *Crowther v. Seaborg*, 415 F.2d 437, 439 (10th Cir.1969).

■ In *Grigsby v. Department of Energy*, 585 F.2d 1069 (TECA 1978), cert. denied 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979) Ruling 1975–15 was challenged. The challenge to this rule centered in whether the ruling explicated the rudimentary definition of "property" in the regulations. In *Grigsby* TECA determined Ruling 1975–15 was a "rational" interpretation of the definition of "property." See also *Energy Consumers and Producers Association, Inc. v. Department of Energy*, 632 F.2d 129, Em. App.1980, (copy attached), wherein it was said:

"... The interpretation in the challenged ruling was a reasonable choice of possible interpretations by the responsible agency. It is not required that the interpretation be the only reasonable choice. [case citations omitted.]

"In the absence of exceptional adverse circumstances this Court should defer to a reasonable exercise of expertise expressed in an interpretative rule by an administrative agency. [case citations omitted.]"

In the instant case plaintiffs have yet to sustain their burden of proof and establish Ruling 1980–3 is not a rational interpretation of the definition of "production."

The Court notes plaintiff's reliance on the Order dealing with discovery in reference to Interpretative Ruling 1975–15 entered by this Court on August 20, 1980, Case Number 79–C–217–BT, *Cotton Petroleum Company v. Charles Duncan, etc.,* (copy previously furnished counsel). In *Cotton* the Court stated:

"... When the DOE enforces, retrospectively, an interpretation of an ambiguous regulation which has palpable effects on the industry, contemporaneous construction evidence is relevant to the merits of the case, and, is therefore discoverable."

The Court was not deciding a preliminary injunction request so it was not required to weigh the plaintiff's likelihood of success on the merits. *Cotton* is therefore not persuasive here.

Plaintiffs argue Ruling 1980–3 is in conflict with the policies adopted by Congress in enacting the Crude Oil Windfall Profit Tax Act of 1980, Pub.L. No. 96–223, 94 Stat. 230, adding 26 U.S.C. § 4986 et seq. Plaintiffs cite the language and comments of Congress in considering this Regulation and Congress' understanding of the Incentive Regulations. In *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 132, 95 S.Ct. 335, 353, 42 L.Ed.2d 320 (1974) the Supreme Court said:

"[P]ost-passage remarks of legislators, however explicit ... represent only the personal view of those legislators since the statements were [made] after passage of the Act."

After considering the opposing contentions of the parties, the Court finds the record to date favors the position taken by the defendants. The general principle is one of deference to administrative interpretation of an agency's own regulations. See *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). This Court recognizes the rule is not absolute. *Standard Oil Co. of Ohio v. Federal Energy Admin.,* 612 F.2d 1291, 1297 (Em.App.1979). Adminis-

trative interpretations do not control if they are plainly erroneous or they are inconsistent with the regulations. The Court finds plaintiffs have not yet sustained their burden that Ruling 1980–3 is clearly erroneous or inconsistent with the regulations, thus indicating a likelihood of success on the merits.

Plaintiffs allege they have certified the crude oil produced from the Mudd No. 1 Well as "newly discovered crude oil" and sold the production at market prices, depositing the difference between market price and the price otherwise permitted under the price regulation in a "suspense account" pending determination of the proper classification of the crude. Plaintiffs further state upon a final determination of the proper classification of the Mudd Well Production, these revenues will be available to make refunds to plaintiffs' customers if necessary.

Plaintiffs contend the DOE regulations which limit retroactive price increases to sales made within 60 days preceding a determination favorable to the seller has no application to the instant situation. Here, plaintiffs admit they are charging market price and certifying their production as "newly discovered crude."

A potential injury to plaintiffs could be penalties if they are assessed by DOE in the future as a result of enforcement proceedings if commenced against plaintiffs. There is no allegation or contention on the part of plaintiffs that such enforcement proceedings have been instituted or that even an NOPV has been issued.

■ A party moving for preliminary injunctive relief must carry the burden of showing irreparable injury. See *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Yakus v. United States,* 321 U.S. 414, 439–440, 64 S.Ct. 660, 674, 88 L.Ed. 834 (1944). The key word in this consideration is "irreparable." Mere injuries, however substantial in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. Irreparable injury is the sine qua non for the grant of preliminary relief. The Court concludes, based on the evidence and argument presented at the hearing on the preliminary injunction plaintiffs have not sustained their burden of showing irreparable injury.

In considering the criteria number 3, the effect the entry of a preliminary injunction would have upon DOE, the Court should not ignore the industry-wide implications, although technically it would concern only the parties before the Court.

Finally, the Court must consider, when relevant, the factor of public interest or policy in the determination of the issuance of a preliminary injunction. Public policy favors DOE's regulatory authority. An argument could be made that, as here, a public policy conflict may inhere in tier pricing and production incentives. In light of the record before the Court with respect to the merits of plaintiffs' position and the Congressional intent vesting regulatory authority in DOE, public policy would not be best served at this time by the issuance of a preliminary injunction.

It is well recognized that "[t]he award of a [preliminary] injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury might otherwise result to the plaintiff … [but is rather] a matter of sound judicial discretion. . . ." and careful balancing of the interests of the respective parties. *Yakus v. United States, supra,* 321 U.S. 414, 440, 64 S.Ct. 660, 674–75, 88 L.Ed. 834.

IT IS, THEREFORE, ORDERED as follows:

1. Defendants' Motion to Dismiss is overruled.

2. Plaintiffs' Application for a Preliminary Injunction is denied.

3. Defendants are directed to file their answer on or before Friday, January 16, 1981.