ROYE REALTY & DEVELOPING,
INC., an Oklahoma Corporation,
Appellee,

v.

Rollin D. WATSON, a/k/a R.D. Watson,
and Dorothy Ellen Watson, husband
and wife, Appellants.

No. 72174.

Court of Appeals of Oklahoma,
Division No. 3.

April 3, 1990.

James P. McCann, Richard J. Eagleton, Doerner, Stuart, Sanders, Daniel & Anderson, Tulsa, for appellants.

David L. Wilson, Stigler, for appellee.

## MEMORANDUM OPINION

BAILEY, Judge:

Appellants Rollin D. and Dorothy Ellen Watson (Appellants or Watsons) seek review of the Trial Court's orders granting temporary injunction to Appellee Roye Realty and Developing, Inc. (Appellee or Roye) and denying Watsons' post-hearing motion for a stay of the injunction. Watsons, as Lessors, executed an oil and gas lease to Roye, as Lessee, covering certain lands located in Haskell County. The primary term of the lease extended from June 16, 1982 to June 16, 1983, and Roye drilled and initially completed a gas well apparently capable of production in paying quantities within the primary term. Roye tendered shut-in royalties to the Watsons from and after June, 1984.

In late 1988, Roye attempted to construct a pipeline across Watsons' property, as permitted by the lease. Watsons objected to the pipeline construction across their property, and Roye filed a Petition in District Court alleging Watsons had refused Roye his rights of ingress and egress for the purpose of laying pipeline. In his suit, Roye sought an order enjoining Watsons from interfering with construction of the pipeline. Watsons denied Roye's right to injunctive relief, and filed counter-claims against Roye, demanding, *inter alia*, an accounting of shut-in royalties, cancellation of the leases for failure to pay shut-in royalties, and damages for trespass.

On November 30, 1988, the Trial Court granted a temporary injunction as requested by Roye, and denied Watsons' oral mo-

tion for a fourteen day stay thereof. Watsons now attack the judgment of the Trial Court under four propositions of error: (1) error of the Trial Court in according an overbroad construction to the lease-granted right of Roye to lay pipeline, (2) error in according the lease any effect, the lease having expired for Roye's failure to pay shut-in royalties, (3) error of the Trial Court in accepting evidence of an expired gas purchase contract between Roye and a third party gas purchaser, and covering gas produced from the Watsons' lease, and (4) insufficiency of Roye's evidence of entitlement to injunctive relief.

■■■ In Oklahoma, in consideration of applications for temporary injunctions, four criteria are considered; (1) applicant's likelihood of success on the merits, (2) irreparable harm to the party seeking relief if injunctive relief is denied, (3) relative effect on the other interested parties, and (4) public policy concerns arising out of the issuance of injunctive relief. As to the first consideration, it has been noted:

> To warrant issuance of preliminary injunction, it is not necessary that moving party's right to final decision be without doubt; rather, the burden is on party seeking relief to make prima facie showing of reasonable probability of prevailing on the merits.

*Williams Expl. Co. v. U.S. Dept. of Energy,* 561 F.Supp. 465 (N.D.Okl.1980).

In review of orders granting or denying injunctive relief, as in any equity action, this court will review the evidence, but will not disturb the trial court's findings and judgment unless found clearly against the weight of evidence. *Amoco Production Co. v. Lindley,* 609 P.2d 733 (Okl.1980); *Kasner v. Reynolds,* 268 P.2d 864 (Okl. 1954). Under these standards we proceed to the merits of Watsons' complaints, addressing their second proposition of error concerning validity of the lease first.

In essence, Watsons' assert in their second proposition that the Trial Court failed to recognize the expiration of the oil and gas lease upon which Roye relied for its claim of right to build the pipeline. The crux of this proposition is that Roye failed to make a timely payment of the first shut-in royalty after expiration of the primary term so as to propel the lease into a valid secondary term.

■■■ Generally, under Oklahoma law, a royalty owner is not entitled to cancellation of an oil and gas lease for failure on the part of the working interest owner to pay royalties unless the lease so provides:

> Failure to pay royalty or for injury to the land as provided by the lease will not give the lessors sufficient grounds to declare a forfeiture, unless by the express terms of the lease they are given that right and power.

*Wagoner Oil & Gas Co. v. Marlow,* 137 Okl. 116, 278 P. 294 (1929).

See also, *Cannon v. Cassidy,* 542 P.2d 514 (Okla.1975). Even where the lease contains a "shut-in" royalty clause, discovery of minerals in producing quantities during the primary term is sufficient to propel the lease into the secondary term. See also, *Gard v. Kaiser,* 582 P.2d 1311, 1314–1315 (Okl.1978); *Flag Oil Corp. of Delaware v. King Resources Co.,* 494 P.2d 322, 324–325 (Okl.1972). As Professor Hemingway notes:

> [N]either nonpayment of shut-in royalty after the end of the primary term, nor the failure to secure actual production prior to the end of the shut-in royalty period will terminate the lease *if the lessee is acting as a reasonably prudent lessee under the circumstances in securing actual production.*

Hemingway, *The Law of Oil and Gas* (2d Ed.1983), § 6.5, p. 310. (Emphasis added.)

The question of whether a lessee has acted reasonably in operation and marketing depends on the facts and circumstances of each particular case, and presents a question of fact for determination by the trier of fact. See, e.g., *Spaeth v. Union Oil Co.,* 710 F.2d 1455 (10th Cir.1983); *Barnes v. Mack Oil Co.,* 376 P.2d 279, 281 (Okl. 1962) (determination of breach of implied covenants dependent on facts and circumstances of particular case); *Gazin v. Pan American Petroleum Corp.,* 367 P.2d 1010, 1012 (Okl.1962) (reasonable time for

marketing dependent on facts and circumstances of each case.)

In the instant case, the primary term of the lease in question extended from June 16, 1982 to June 16, 1983. The well completion report filed with the Oklahoma Corporation Commission indicates an initial single zone completion on February 26, 1983, about three and one-half months prior to the expiration date of the lease. The record clearly shows Roye tendered shut-in royalty to Watsons from June 1984 to the present. Our examination of the Standard Form 88 lease employed in the instant case discloses no provision granting the right to Watson's to declare forfeiture of the lease in the event of failure to pay shut-in royalties. We find no evidence in the record concerning Roye's efforts to market the product after discovery from which to determine whether Roye acted reasonably or within a reasonable time after discovery.

Therefore, and without expressing an opinion as to the merits of Watsons' counter-claim for cancellation of the lease, the merits of which are yet to be heard, we find that Roye properly demonstrated a prima facie case of the right under an apparently valid lease, held by discovery of production in paying quantities during the primary term, to construct a gas pipeline across Watsons' property so as to warrant the grant of a temporary injunction. This is not to say that Watsons will not prevail on their claims for cancellation of the lease or damages for trespass arising from excess use of pipeline easements. We however find no error by the Trial Court in relying on the lease provision granting Roye as lessee the right to construct a pipeline for marketing of product from the subject well.

In their first proposition of error, Watsons assert that the Trial Court erred in allowing construction of a pipeline across Watsons' property under the lease provision therefor. In this proposition, Watsons argue that Roye is attempting to construct a pipeline gathering system across their property for servicing four wells in the vicinity, and the lease should only be construed as allowing construction of a pipe-line to service the one well covered by the subject lease. The Form 88 Oil and Gas Lease in the instant case contains the following provision:

> [Lessors hereby] grant, demise, lease and let unto the said lessee, for the sole and only purpose of exploring by geophysical and other methods, mining and operating for oil ..., gas ..., *and for laying pipe lines,* and building tanks, powers, stations and other structures thereon .... (Emphasis added).

Clearly under Oklahoma law, the lessee or mineral owner is entitled to use so much of the surface as is reasonably necessary for the exploration and development of the mineral estate, i.e., to carry out the purposes of the lease for the mutual benefit of both lessors and lessees. *Thompson v. Andover Oil,* 691 P.2d 77 (Okla.App. 1984); *Ricks Exploration Co. v. Okla. Water Resources Bd.,* 695 P.2d 498 (Okl.1984). By statute, the lessee is liable to the owner of the surface estate for damages "caused by the drilling operation." 52 O.S.Supp. 1982 & 1987 § 318.2 et seq., 52 O.S. § 318.5. "Damages collected pursuant to this act shall not preclude the surface owner from collecting any additional damages caused by the operator at a subsequent date." 52 O.S. § 318.9. Thus, if the lessee uses more surface than is reasonably necessary for the operation and development of the lease, he may be liable to the owner of the surface estate for damages arising therefrom. *Thompson,* 691 P.2d at 82; *Tenneco Oil Co. v. Allen,* 515 P.2d 1391 (Okl.1973); *Lone Star Producing Co. v. Jury,* 445 P.2d 284 (Okl.1968). "The extent to which the use of the surface is reasonably necessary for oil and gas operations is a question of fact for a jury." *Thompson,* 691 P.2d at 82; see also, *Davon Oil Co. v. Steele,* 186 Okl. 380, 98 P.2d 618, 621 (1940).

As a working interest owner and as operator of the wells, Roye has a responsibility to actively market the gas. To that end, and in the present case, the lease explicitly grants to Roye the right to lay pipeline to transport the gas across the land of the Watsons. Under the above authority, Roye

has a right to use as much of the surface as is reasonably necessary in the development of the mineral estate and marketing of discovered product. Watsons have a direct pecuniary interest in four wells that will be connected to the new pipeline. By granting the temporary injunction, the Watsons have been placed in a better position by the provision of a means to transport and sell the gas removed from their well. Again, without expressing an opinion thereon, if Watsons' show that Roye has used more surface than reasonably necessary, they may recover damages therefor. With regard to the grant of the temporary injunction, however, in our opinion, Watsons did not adduce sufficient evidence to show that Roye sought to use more of the surface estate than reasonably necessary so as to warrant denial of Roye's requested injunctive relief, and we consequently reject this allegation of error.

 Watsons assert in their third proposition that the Trial Court erred in accepting evidence of a gas sales contract between Roye and a third party which expired by its own terms on the date of hearing. The relevance and admission of evidence are matters addressed to the sound discretion of the Court, whose rulings thereon will not be disturbed absent a showing of abuse of discretion. 12 O.S. 1981 §§ 2402, 2403; *Whitely v. OKC Corp.*, 719 F.2d 1051 (10th Cir.1981); *Cooper v. State*, 671 P.2d 1168 (Okl.Cir.1983); *Samara v. State*, 398 P.2d 89 (Okl.1964), cert. den. and appeal dismissed, 381 U.S. 354, 85 S.Ct. 1556, 14 L.Ed.2d 681. Further, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right" is affected. 12 O.S.1981 § 2104(A)(2).

Under these standards, we have reviewed the questioned evidence, appearing to be a standard run-of-the-mill gas purchase agreement with nothing patently irregular on its face. The term of the contract extends from November 1, 1988 through and including November 30, 1988, the date of hearing of the instant matter. The agreement provides for extension "by mutual agreement of the parties hereto."

It is therefore apparent that (1) Roye and a buyer have come to some agreement with regard to sale of product from Watsons' well, (2) during the pendency of this matter before the Trial Court, the contract remained in full force and effect, (3) the contract constituted proof of immediate need and irreparable harm, requisite for issuance of a temporary injunction and (4) the gas purchase agreement evidenced Roye's apparent good faith efforts to market the gas. We consequently find no substantial rights of Watsons affected by admission of the evidence, and further find no abuse of discretion in admitting the challenged evidence.

 As their final proposition of error, Watsons' assert that as a matter of law, the Trial Court erred in granting the temporary injunction because of insufficiency of Roye's evidence. We disagree. Roye's evidence arguably established under the authorities previously set forth herein (1) a likelihood of success on the merits, (2) harm if denied temporary relief, (3) no adverse impact, or alternatively, compensable adverse impact on Watsons, and (4) no violation of public policy, so as to entitle Roye to temporary relief. We disagree with Watsons' argument that this action and subsequent injunction has altered the status quo, or has judicially sanctioned Roye's "trespass" on Watsons' property. As previously stated, the oil and gas lease gave Roye a right to lay pipe in the exploration and development of the mineral interest of both parties, and Roye would be remiss in his duties as lessee if he failed to develop and market the gas. The installation of the pipeline and subsequent transportation and sale of the gas benefits Watson and other mineral interest holders as well.

The orders of the Trial Court granting Roye a temporary injunction and denying Watsons' a stay thereof are therefore

AFFIRMED.

HANSEN, P.J., and GARRETT, J., concur.